**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

FREDRICK CAMPBELL,

      Petitioner

vs.                                Case No.:     3:12-cv-881-J-34MCR
                                                                     3:09-cr-51-J-34MCR

UNITED STATES OF AMERICA,

      Respondent

_____

## ORDER

This case is before the Court on Petitioner Fredrick Campbell's Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody under 28 U.S.C. § 2255, (Doc. 1, Motion to Vacate) and Memorandum of Law (Doc. 2-1, Supporting Memorandum)[1], filed on August 1, 2012.  The United States filed its Response to the Motion to Vacate on March 6, 2014.  (Doc. 20, Response).

Pursuant to 28 U.S.C. § 2255 and Rule 8(a) of the Rules Governing Section 2255 Proceedings[2], the Court has considered the need for an evidentiary hearing and determines that an evidentiary hearing is not necessary to resolve the merits of this action.  See Aron v. United States, 291 F.3d 708, 714-15 (11th Cir. 2002) (indicating that an evidentiary hearing on a § 2255 petition is not required when the petitioner asserts allegations that are

---

[1] Citations to Campbell's criminal case file, United States of America v. Fredrick Campbell, 3:09-cr-51-J-34MCR, are denoted as "Crim. Doc. ___."  Citations to Campbell's civil § 2255 case file, 3:12-cv-881-J-34MCR, are denoted as "Doc. ___."

[2] Rule 8(a) of the Rules Governing Section 2255 Proceedings requires the Court to review the record, including any transcripts and submitted materials, to determine whether an evidentiary hearing is warranted before deciding on a § 2255 motion.

1

affirmatively contradicted by the record or patently frivolous, or if in assuming the facts that he alleges are true, he still would not be entitled to any relief); Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989) (concluding that a petitioner's ineffective assistance claim can be dismissed without an evidentiary hearing when the petitioner alleges facts that, even if true, would not entitle him to relief); Dickson v. Wainwright, 683 F.2d 348, 351 (11th Cir. 1982) ("On habeas a federal district court need not conduct an evidentiary hearing if it can be conclusively determined from the record that the petitioner was not denied effective assistance of counsel."); Patel v. United States, 252 F. App'x 970, 975 (11th Cir. 2007).[3]

For the reasons set forth below, the Motion to Vacate is due to be denied.

## I.     Background

In his Motion to Vacate, Campbell contends that his attorneys rendered ineffective assistance of counsel in their handling of Campbell's Fourth Amendment motion to suppress evidence.  Specifically, Campbell faults his attorneys for not producing evidence and testimony that he claims would have established a reasonable expectation of privacy in the items and places from which law enforcement gathered incriminating evidence.

Law enforcement began investigating Campbell when a confidential informant notified the Jacksonville Sheriff's Office (JSO) that Campbell was receiving large shipments of marijuana through the mail via Federal Express (FedEx) and United Parcel Service (UPS).  (Crim. Doc. 147, Report on Recommendation on Campbell's Motion to Suppress

---

[3] Although the Court does not rely on unpublished opinions as precedent, they may be cited throughout this Order as persuasive authority on a particular point.  Rule 32.1 of the Federal Rules of Appellate Procedure expressly permits the Court to cite unpublished opinions that have been issued on or after January 1, 2007.

at 2).  JSO identified several addresses connected to Campbell, and then requested FedEx

and UPS to "flag" those addresses, including one residence located at 7635 Praver Drive

East, Jacksonville, Florida (the "Praver house").

On January 8, 2009, a UPS security employee notified JSO of a package addressed

to one "Maureen Lawrence" that was destined for the Praver house.  (Doc. 25, Narcotics

Unit Incident Report attached to Petitioner's Reply at 37; R&R at 3-4).  Acting on his own,

the UPS employee opened the package and discovered what he believed to be marijuana

inside.  R&R at 3.  JSO officers arrived at the employee's office 20 to 30 minutes later,

where they observed the drugs sitting in plain view.  An officer trained to detect narcotics

identified the substance as marijuana.  Id.  The UPS employee then resealed the package

and police officers took the parcel so they could execute a controlled delivery once they

received an anticipatory search warrant, which they obtained later that same day.  Id. at 4.


With the warrant in hand, law enforcement proceeded to the Praver address with the

package.  An officer in plain clothes delivered the package to Campbell at approximately

5:50 pm in the evening.  Narcotics Unit Incident Report Attached to Petitioner's Reply at

37.  Campbell stated in his trial testimony that he had been spending the day at the Praver

house, left at some point, and then returned later in the day for the purpose of receiving the

package.  (Doc. 342, Trial Tr. Vol. V at 71, 116). When Campbell received the package,

however, he attempted to "distance himself" from it by suggesting  that it belonged to a

sibling.  R&R at 16.  Nevertheless Campbell took the package, and returned inside the

house.  Id.

Five to ten minutes later, officers forcibly entered the Praver residence to execute

3

the search warrant.  The officers located the UPS package in a car parked in the garage, along with another 50-pound container of marijuana.  Id. at 8.  Officers also found four firearms at the Praver house, including an assault rifle with a 100-round magazine.  Id. at 9.  As the officers continued their search of the house for marijuana, they discovered a laptop with an open screen displaying a UPS tracking number, along with a money counter, several thousand dollars in cash, a lease agreement naming Alex Campbell as lessee of the Praver house, other lease agreements, and storage unit rental agreements.  Id. at 9.  These documents led the police to obtain search warrants for a house at 4708 Trevi Drive in Jacksonville, Florida (the "Trevi house"), and Storage Unit 226 at Atlantic Self-Storage.

The police arrested Campbell and his brother.  A search of Campbell incident to his arrest disclosed over $5,000 in cash and a small amount of marijuana.  Id. at 11.  During the arrest, police officers also attempted to ascertain where Campbell lived, but Campbell appeared evasive in his answers.  Id. at 17.  Campbell initially provided a Post Office (P.O.) box as his address, which was the address listed on his driver's license.  According to Campbell, the arresting officer would not accept such an address, so Campbell provided the Praver residence as his address.  Id.; see also Doc. 25, Petitioner's Reply at 1-2.  However, Campbell told the attorney handling his motion to suppress that he did not live at the Praver house[4], and testified at trial that instead he lived at a house on Ponce de Leon Avenue.  Trial Tr. Vol. V at 107-09.

After the Praver house search, police officers searched Storage Unit 226 pursuant

---

[4] According to Campbell, he informed Haine that he was a regular guest at the Praver residence but did not live there.  Haine became concerned about putting Campbell on the stand because "it wouldn't be a good idea to tell the government you didn't live at the Praver home, because if I were to say you didn't stay at the home, you wouldn't have standing to challenge the search."  Affidavit A-1 at ¶ 6.

to a search warrant, where they discovered a safe and food saver containing cash, Alex Lee Campbell's birth certificate, mail addressed to Alex Lee Campbell, money gram receipts, and another receipt in the name of Sonia Dodd. (Crim. Doc. 214, Government's Exhibit List at 5-6). Storage Unit 226 contained more than $500,000 in cash. Petitioner's Reply at 39. Meanwhile, a search of the Trevi residence revealed items related to shipping, including money grams, hotel receipts, car rental and airline documents, storage unit rental agreements, and notes containing addresses, phone numbers and tracking numbers. R&R at 10. One of the rental agreements seized from the Trevi house led police to obtain a further search warrant for another storage unit, Unit 2002 at Atlantic Self-Storage. A search of Unit 2002 uncovered an AK-47-style assault rifle and boxes of shipping receipts apparently connected to shipments of marijuana. Id.

On September 10, 2009, a grand jury sitting in the Middle District of Florida returned a superseding indictment charging Petitioner Fredrick Campbell, his brother Alex Lee Campbell, his sister Branddie Campbell, and his mother Sonia Dodd with conspiracy to possess with intent to distribute 1,000 kilograms or more of marijuana, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846 (Count One). (Crim. Doc.142, Superseding Indictment). The indictment also charged Campbell and his brother Alex with possessing, causing to be possessed, and aiding and abetting in the possession with the intent to distribute marijuana, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 18 U.S.C. § 2 (Count Two). The indictment further charged Campbell and his brother with possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A) (Count Three naming Petitioner Fredrick Campbell, Count Four naming Alex Lee Campbell).

Campbell's pretrial counsel, Ross Haine, filed a motion to suppress the evidence obtained from the UPS employee's search of the parcel, the police officers' search of the Praver house, and the search of Storage Unit 2002.  (Crim. Doc. 119, Motion to Suppress at 1-2).  Haine also sought to exclude evidence seized from the Trevi house and Storage Unit 226 as the fruit of a poisonous tree derived from the searches of the UPS package and the Praver house.  (Crim. Doc. 135, Suppression Transcript at 205-11; Motion to Suppress at 1-2).

On August 12, 2009, a Magistrate Judge conducted an evidentiary hearing on Campbell's and his co-defendants' motions to suppress.  The defendants did not present any of their own witnesses at the hearing.  Campbell's attorney relied on cross-examination of the government's witnesses in an attempt to show facts demonstrating Campbell's expectation of privacy in the UPS parcel and the Praver house.  According to Campbell, Haine deliberately chose not to have Campbell testify at the suppression hearing because Haine stated "[i]t would not be a good idea to get on the stand because the government would trip you up with questions."  Supporting Memorandum at 37 n. 25.

After the suppression hearing, the Magistrate Judge issued a detailed Report and Recommendation that recommended that Campbell's motion to suppress be denied for failure to establish an expectation of privacy in the UPS package, the Praver house, storage units 226 and 2002, as well as the Trevi house.  (R&R at 35-36).  Additionally, in the Report the Magistrate Judge found that when police officers seized and inspected lease documents at the Praver and Trevi houses -  which in turn led the officers to obtain search warrants for storage units 226 and 2002 - the officers exceeded the scope of the search warrant and could not rely on the plain view doctrine.  Id. at 28-35.  However, because

6

Campbell neither owned, rented, lived at, nor demonstrated an unrestricted right of occupancy in either the Praver or Trevi houses where the unlawful searches occurred, he could not establish an expectation of privacy in either one.  Id. at 17-20.  Thus, the Magistrate Judge concluded that Campbell could not avail himself of the "fruit of the poisonous tree" doctrine.  Id. at 23, 35.  Only Sonia Dodd could establish an expectation of privacy in the Trevi house, and thus the Magistrate Judge recommended partially granting the motion to suppress as to Dodd but denying it as to Campbell and his brother Alex.  Id. at 35-36.

In the Report, the Magistrate Judge alternatively concluded that even if Campbell did have an expectation of privacy in the UPS parcel, the UPS employee's act of opening the package, inspecting the contents, and notifying police about the drugs did not violate the Fourth Amendment because the employee was a private citizen not acting on behalf of the government.  Id. at 21-23. Although the UPS employee had searched packages destined for "flagged" addresses and notified JSO of their contents on 50 to 100 occasions in the past, the Magistrate Judge concluded that the police neither instructed nor compelled the employee to open the package.  Id. at 7.  Rather, the employee opened the package on his own initiative pursuant to UPS's internal policy against shipping contraband.  Id. at 5-6.

Campbell proceeded to trial on February 9, 2010.  At trial, Campbell testified under oath that he was the only individual in his family involved in buying and selling marijuana, and that his family members neither knew about nor participated in his drug enterprise.  Trial Tr. Vol. V at 63-64.  During his trial testimony, Campbell's attorney and the prosecutor collectively asked him at least three times whether he lived on Praver Drive, and Campbell

7

denied either renting or residing at the Praver house each time.  Id. at 104, 130, 153.

Campbell did not mention having extensive social ties to the Praver house either.  Instead,

Campbell testified that from 2006 to 2009, he resided at a succession of houses on

Marianna Road, Napo Drive, and Ponce de Leon Avenue in Jacksonville, Florida, and that

he resided at a house on Ponce de Leon Avenue when the search occurred.  Id. at 107-09.

With respect to Storage Unit 2002, Campbell testified that the unit belonged to one

Marc Kredell, and that Campbell had no idea what was in it.  Id. at 93.  Indeed, Campbell

testified that he knew nothing about unit 2002 until the trial.  Id. at 150.  Additionally, with

respect to the Trevi house, Campbell testified about his relationship with his mother, Sonia

Dodd, who resided there.  (Affidavit A-5 at ¶¶ 2-3).  Campbell stated that he was

"somewhat close" with Dodd but that he had not stayed with her since 2006.  Trial Tr. Vol.

V at 118-19.  Rather, Campbell said he simply talked to Dodd about twice a week.  Id. at

119.

The jury found Campbell and his brother guilty of all charges listed in the

superseding indictment, despite Campbell's efforts to take responsibility for the entire drug

enterprise.  (Crim. Doc. 259, Jury Verdict as to Fredrick Campbell; Crim. Doc. 260, Jury

Verdict as to Alex Lee Campbell).  Campbell's sister, Branddie, and his mother, Sonia

Dodd, each pled guilty, also despite Campbell's effort to claim they were not involved in his

drug enterprise.  (Crim. Doc. 275, Report and Recommendation on Accepting Branddie

Campbell's Guilty Plea; Crim. Doc. 269, Sonia Dodd's Plea Agreement).  At his sentencing

hearing, the Court found that Campbell deliberately gave perjured testimony.  (Crim. Doc.

344, Sentencing Tr. at 42-44).  Specifically, the Court found that Campbell lied under oath

about his family members' lack of involvement in the drug conspiracy, the amount of

8

marijuana Campbell was trafficking, Campbell's lack of knowledge about Unit 2002, and the location of certain shipping and tracking receipts.  Id.  The Court sentenced Campbell to a term of imprisonment of 195 months.  (Crim. Doc. 322, Judgment as to Fredrick Campbell).  Campbell received a term of 60 months for possessing a firearm in furtherance of a drug conspiracy, which ran consecutively to a term of 135 months for the underlying drug charges.  Id.

Campbell appealed his conviction, sentence, and this Court's denial of his motion to suppress to the Eleventh Circuit Court of Appeals.  The Court of Appeals affirmed Campbell's conviction and sentence along with the denial of the motion to suppress.  United States v. Campbell, 434 F. App'x 805 (11th Cir. 2011).  In doing so, the Court of Appeals concluded both that Campbell lacked a legitimate expectation of privacy in the UPS parcel and in the Praver residence.  Id. at 809-10.  Rejecting Campbell's claim of an expectation of privacy in the UPS parcel, the Court noted that Campbell was neither the sender nor the addressee on the package, and that he "attempted to distance himself from the package's addresee" when he spoke to police.  Id. at 809.  The Court of Appeals further found that Campbell lacked an expectation of privacy in the Praver residence:

> A defendant may have a reasonable expectation of privacy in a home that he does not own or rent if he shows "an unrestricted right of occupancy or custody and control of the premises as distinguished from occasional presence on the premises as a mere guest or invitee." Baron–Mantilla, 743 F.2d at 870 (quotations omitted). Where there was testimony that a defendant did not live in a searched apartment, as well as testimony that someone other than the defendant had leased the apartment, the defendant had not shown that he had a reasonable expectation of privacy in the apartment. United States v. Brazel, 102 F.3d 1120, 1148 (11th Cir. 1997).
>
> At trial, Frederick testified that he did not live in the Praver house, and at the suppression hearing, the evidence showed that Frederick did not lease the

9

house. Accordingly, since he did not establish that he was more than a mere guest at the Praver house, he did not have standing to challenge the search of the house.

Campbell, 434 F. App'x at 810.  After rejecting Campbell's remaining claims, the Circuit Court remanded the case in part for this Court to correct a clerical error in Campbell's judgment, but otherwise affirmed. Id. at 810-12.

## II.  Campbell's Motion to Vacate

In his Motion to Vacate, Campbell raises claims of ineffective assistance of counsel against Ross Haine ("suppression counsel"), who argued Campbell's unsuccessful motion to suppress, and against Louis Hardin ("trial counsel").  Motion to Vacate at 4.  Campbell argues that Haine ineffectively litigated his motion to suppress by failing to establish Campbell's expectation of privacy in the UPS package, the Praver residence, and storage unit 2002.  Supporting Memorandum at 6 n. 1.  Specifically, Campbell faults Haine for not calling Campbell and various acquaintances as witnesses at the suppression hearing to establish Campbell's standing to challenge the various searches.  Campbell asserts that he and his friends would have provided testimony proving that Campbell had a legitimate expectation of privacy in the parcel, the Praver house, and storage unit 2002.  Supporting Memorandum at 7, 9 n. 5, 17-24.  Campbell further claims that Haine was ineffective for "abandoning" a challenge to the searches of storage unit 226 and the Trevi residence, in both of which Campbell also claims to have had an expectation of privacy.  Supporting Memorandum at 7, 14-15.   Campbell argues that Haine was professionally unreasonable in relying on law enforcement officers' beliefs that Campbell was the intended recipient of the UPS parcel and a resident of the Praver house in order to establish Campbell's

10

expectation of privacy therein.  Supporting Memorandum at 10.  Finally, Campbell argues that Haine failed to challenge the searches of the Trevi residence and storage unit 226 because of an erroneous and unreasonable belief that Campbell lacked an expectation of privacy in either location.  Campbell argues he had a superior strategy: Haine should have called Campbell to testify in the suppression hearing, where Campbell states he would have admitted to the entire enterprise in order to establish his expectation of privacy in the UPS parcel, the Praver and Trevi residences, and storage units 2002 and 226.  See Affidavit A-3; Petitioner's Reply at 19-20.

With regard to trial counsel, Louis Hardin, Campbell contends counsel provided ineffective assistance by not correcting Haine's alleged errors.  Because Haine did not summon Campbell at the suppression hearing, Campbell claims Hardin should have elicited testimony from Campbell at trial to establish Campbell's expectation of privacy in each of the places and items searched.  Id. at 33-35.  That way, Campbell argues, the record on appeal would have contained sufficient evidence allowing the Circuit Court of Appeals to conclude Campbell had expectations of privacy in the package, the Praver and Trevi houses, and both storage units, allowing the Court of Appeals to reverse the denial of his motion to suppress.  Supporting Memorandum at 34-35; see also Petitioner's Reply at 18.

Campbell attached to his Motion to Vacate several affidavits from himself and others purporting to establish Campbell's expectation of privacy in the Praver house, the Trevi house, and the UPS package.  In his affidavit, Campbell asserts that he was a frequent guest at the Praver house where he would visit to socialize, listen to music, watch television, play video games, and occasionally spend the night.  Affidavit A-2 at ¶¶ 6-8.

11

Campbell states that he kept personal possessions at both houses and that he had a key to the Trevi house, though not the Praver house.  Affidavit A-2 at ¶¶ 9-10; Affidavit A-5 at ¶ 3.  Campbell claims he often spent the night at both houses, including the night of January 7, 2009, at the Praver house - i.e., the night preceding the January 8, 2009 search of the Praver house.  Affidavit A-2 at ¶ 7.  Campbell does not claim that he planned to spend the night of January 8, 2009, at the Praver house though.  Campbell further avers that he was allowed to invite guests to the Praver residence, and that he and various friends and girlfriends would spend the night there on occasion.  Supporting Memorandum at 16-24; Affidavit C-1 at ¶¶ 3-4.

With the affidavits Campbell also attempts to establish that Haine failed to consult Campbell or to adequately investigate Campbell's case for suppression.  Campbell contends that while he did not have a key to the Praver house, he was free to be there any time without permission.  Affidavit A-2 at ¶ 10.  Campbell also asserts that he had a key to the Trevi house, he was free to be there at any time without permission, and that he frequently stayed the night at the Trevi house.  Affidavit A-5 at ¶¶ 4-5.  Campbell argues that if Haine had done a better investigation, he would have learned of this information and summoned Campbell and his family and friends to establish Campbell's expectation of privacy in the Praver and Trevi houses.  Supporting Memorandum at 16-24.

Notably, however, the affidavits attached to Campbell's Motion to Vacate reveal that Haine had certain concerns about having Campbell and one of his proposed witnesses testify.  According to one affidavit, Campbell raised the issue of testifying in his suppression hearing and Haine replied that he did not believe it was a good idea.  Haine feared "that the government would trip [Campbell] up."  (Doc. 2, Sworn Affidavit of Fredrick Campbell A-1

12

at ¶ 10).  According to Campbell, Haine opined "that it would be bad for the defense if [Campbell] testified."  Id.  According to another affidavit from one Temario Wiley (a roommate of Alex Lee Campbell and a resident of the Praver house), Haine met with Wiley and two of Campbell's friends before the suppression hearing to discuss Campbell's case. (Doc. 2, Sworn Affidavit of Temario Wiley C-2 at ¶ 4).  According to Wiley, Haine stated that he did not believe Wiley's testimony could help Campbell, and Haine informed Wiley that he did not think Wiley was a credible witness.  Id. at ¶¶ 5-6.

###    III.    Opinion

Pursuant to Title 28, United States Code, Section 2255, a person in federal custody may move to vacate, set aside, or correct his sentence.  Section 2255 permits such collateral challenges on four specific grounds: (1) the imposed sentence was in violation of the Constitution or laws of the United States; (2) the court did not have jurisdiction to impose the sentence; (3) the imposed sentence exceeded the maximum authorized by law; or (4) the imposed sentence is otherwise subject to collateral attack.  28 U.S.C. § 2255(a) (2008).  Only jurisdictional claims, constitutional claims, and claims of error that are so fundamentally defective as to cause a complete miscarriage of justice will warrant relief through collateral attack.  United States v. Addonizio, 442 U.S. 178, 184-86 (1979).  A petitioner's challenge to his sentence based on a Sixth Amendment claim of ineffective assistance of counsel is normally considered in a collateral attack.  United States v. Teague, 953 F.2d 1525, 1534 n. 11 (11th Cir. 1992).

A petitioner cannot use habeas corpus as an avenue for relitigating Fourth

Amendment claims, provided that the petitioner had a "full and fair" opportunity to raise the claim in the trial court and on appeal. <u>Stone v. Powell</u>, 428 U.S. 465, 494 (1976). However, a habeas petitioner can argue that the ineffective assistance of counsel deprived him of a full and fair opportunity to litigate Fourth Amendment claims in the trial court. <u>Kimmelman v. Morrison</u>, 477 U.S. 365, 373-83 (1986).

As with any Sixth Amendment ineffective assistance of counsel claim, a § 2255 petitioner must demonstrate both: (1) that his counsel's conduct amounted to constitutionally deficient performance, and (2) that his counsel's deficient performance sufficiently prejudiced his defense. <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984); <u>Weeks v. Jones</u>, 26 F.3d 1030, 1036 (11th Cir. 1994). In determining whether the petitioner has satisfied the first requirement, i.e. that counsel performed deficiently, the Court adheres to the standard of reasonably effective assistance. <u>Weeks</u>, 26 F.3d at 1036. The petitioner must show, in light of all the circumstances, that counsel's performance fell outside the "wide range of professionally competent assistance." <u>Id.</u> To satisfy the second requirement, i.e. that counsel's deficient performance prejudiced the defendant, the petitioner must show that there is a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. <u>Id.</u> at 1036-37 (citing <u>Strickland</u>, 466 U.S. at 694). In determining whether a petitioner has met the two prongs of deficient performance and prejudice, the Court considers the totality of the evidence. <u>Strickland</u>, 466 U.S. at 695. However, because both prongs are necessary, "there is no reason for a court... to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." <u>Id.</u> At 697; <u>see also</u> <u>Wellington v. Moore</u>, 314 F.3d 1256, 1261 n. 1 (11th Cir. 2002) ("We need not discuss the

performance deficiency component of [petitioner's] ineffective assistance claim because failure to satisfy the prejudice component is dispositive.").

In order to establish actual prejudice in the context of an ineffective assistance challenge to an attorney's handling of a Fourth Amendment claim, a petitioner must prove both that the underlying Fourth Amendment claim was meritorious and that there is a reasonable probability that the verdict would have been different absent the suppressible evidence. Kimmelman, 477 U.S. at 375. However, while "a meritorious Fourth Amendment issue is necessary to the success of a Sixth Amendment claim... a good Fourth Amendment claim alone will not earn a prisoner federal habeas relief." Id. at 382. "Only those habeas petitioners who can prove under Strickland that they have been denied a fair trial by the gross incompetence of their attorneys will be granted the writ and will be entitled to retrial without the challenged evidence." Kimmelman, 477 U.S. at 382.

### A.  The UPS Package

Campbell has not shown that Haine ineffectively litigated the motion to suppress by failing to establish Campbell's expectation of privacy in the UPS package.  Any attempt to show that Campbell had a legitimate privacy interest in the package would have been meritless on account of the fact that Campbell attempted to disclaim ownership of the parcel when he received it and implied that it belonged to a sibling.  The Eleventh Circuit Court of Appeals has held that disclaiming ownership or knowledge of an item ends any legitimate expectation of privacy in that object.  United States v. Hawkins, 681 F.2d 1343, 1345 (11th Cir. 1982).  Because Haine could not show that Campbell had a reasonable

expectation of privacy in the parcel as a matter of law, Campbell has not shown that the ineffective assistance of counsel deprived him of a meritorious Fourth Amendment claim. Kimmelman, 477 U.S. at 375.

Additionally, the Magistrate Judge undertook an alternative analysis that assumed Campbell did have standing, and concluded that even if Campbell had an expectation of privacy in the package, the UPS employee's act of opening it and informing police of its contents did not violate the Fourth Amendment because the employee was a private individual acting on behalf of UPS rather than the government.  R&R at 21-23.  Because the UPS employee opened the package pursuant to UPS's internal policy against shipping contraband, and because the government neither requested the private employee to open the package nor compensated him for doing so, the Magistrate Judge properly found that the private employee's conduct did not violate the Fourth Amendment.  Id. at 21-23 (citing United States v. Steiger, 318 F.3d 1039, 1045 (11th Cir. 2003)).

This Court adopted that Report and Recommendation in its entirety (Crim. Doc. 200, Order Adopting Report and Recommendation) and the Eleventh Circuit Court of Appeals affirmed this Court's decision on the merits.  United States v. Campbell, 434 F. App'x 805 (11th Cir. 2011).  Although the Circuit Court of Appeals did not analyze the Court's alternative Fourth Amendment analysis as to the UPS package, it also did not disturb that conclusion.  See id. at 810.  Thus, regardless of whether Haine was deficient in failing to establish Campbell's expectation of privacy in the UPS package, no prejudice accrued to Campbell because the private employee's search did not violate the Fourth Amendment as a matter of law.  Even if Haine had shown Campbell had standing, the Court would still have denied Campbell's motion to suppress the evidence obtained from UPS's search of

16

the parcel.  Because Campbell's Fourth Amendment claim concerning the package would have failed even if Haine had established Campbell's privacy interest, Campbell has not demonstrated that he has suffered prejudice.  Kimmelman, 477 U.S. at 375.

### B.  The Praver House

With regard to the Praver house, the Magistrate Judge concluded that the police officers searching the Praver residence exceeded the scope of the search warrant when they examined certain lease documents, but that Campbell lacked standing to challenge the search of the Praver house.  R&R at 27-35.  This Court adopted the Report and Recommendation in denying Campbell's motion to suppress. (Crim. Doc. 200, Order Adopting Report and Recommendation to Deny Motion to Suppress).  Thus, the issue of whether Campbell had a legitimate expectation of privacy in the Praver house was important, because evidence discovered as a result of the search of the house ultimately led to evidence used to establish the quantity of marijuana that Campbell was trafficking. (See Crim. Doc. 343, Trial Tr. Vol. VI at 17-21).

To show that Haine rendered ineffective assistance in litigating Campbell's challenge to the search of the Praver house, Campbell must show that his underlying Fourth Amendment claim had merit.  Kimmelman, 477 U.S. at 375.  Even if the underlying claim is meritorious, however, Campbell must also overcome the strong presumption that strategic considerations informed counsel's performance.  Id. at 382.  Upon reviewing Campbell's argument and the record, the Court concludes that Campbell has not shown either that Haine performed deficiently or that his performance prejudiced Campbell.

As a preliminary matter, it is doubtful that Campbell's claim that he had a reasonable

17

expectation of privacy in the Praver house has merit, even assuming as true his statements that he maintained some personal possessions at the Praver house, that he was a frequent guest there, and that he spent the night of January 7, 2009, at the house.  As the Eleventh Circuit noted on Campbell's direct appeal, "[a] defendant may have a reasonable expectation of privacy in a home that he does not own or rent if he shows 'an unrestricted right of occupancy or custody and control of the premises as distinguished from occasional presence on the premises as a mere guest or invitee.'" Campbell, 434 F. App'x at 810 (citing United States v. Baron-Mantilla, 743 F.2d 868, 870 (11th Cir. 1984)).  However, Campbell has not done so.

The evidence at Campbell's suppression hearing demonstrated that he neither rented nor owned the Praver house.  Campbell, 434 F. App'x at 810.  Campbell further testified that he did not live there either.  Id.  Under these circumstances, Campbell would have to prove "an unrestricted right of occupancy or custody and control of the premises" that exceeds that of a guest or invitee.  Baron-Mantilla, 743 F.2d at 870.  Assuming all of Campbell's sworn statements to be true, he still has not shown such an unrestricted right of occupancy or custody and control.  Significantly, the occupants of the Praver house did not give Campbell a key to the residence.  Affidavit A-2 at ¶ 10.  Therefore, Campbell had to rely on one of the residents either sharing their key with Campbell or unlocking the doors for him.  Trial Tr. Vol. V at 199.  Indeed, one witness testified at trial that on the very day of the search in question, he observed Campbell knocking on the door of the Praver house for someone to let him in.  Id.  Such testimony is inconsistent with a person who has an unrestricted right of occupancy or custody and control of the premises.  Campbell also does not allege that he had his own room or exclusive "personal space" at the Praver house.

See United States v. Gray, 491 F.3d 138, 152 (4th Cir. 2007) (defendant's lack of "private space" in another's house is a factor weighing against finding a reasonable expectation of privacy). The absence of an exclusive personal space suggests that Campbell was not such a privileged guest at the Praver house that he could depend on a given area being available for him to occupy, or that he could expect the residents of the Praver house to exclude others from that space. In fact, Campbell was just one among many visitors who stayed at the Praver house. Supporting Memorandum at 19-22; Affidavit B-1 at ¶¶ 5-7; Affidavit C-1 at ¶¶ 3-4. Thus, while Campbell may have been a frequent guest at the Praver house, left some belongings there, and occasionally spent nights in the past, these facts paint a picture of someone who was a mere invitee when the search occurred on the evening of January 8, 2009, rather than someone with an unrestricted right of occupancy or custody and control.

Nor could Campbell establish a reasonable expectation of privacy as an "overnight guest." See Minnesota v. Olson, 495 U.S. 91 (1990) (overnight guests may have a reasonable expectation of privacy in their host's homes). Although Campbell spent the night of January 7, 2009, at the Praver residence, Campbell's status on the property was substantially attenuated from that of an overnight guest by the time police officers searched the Praver house at 6:00 pm on January 8, 2009, particularly considering Campbell did not plan on spending that night at the Praver house. The fact that a substantial amount of time had elapsed since he was an overnight guest, combined with the lack of intent to sleep over on the evening of the search in question, weigh considerably against Campbell's claim that his status as an "overnight guest" carried over from the previous night into the following evening. See e.g., Hill v. United States, 664 A.2d 347, 352-53 (D.C. 1995) (defendants

19

were no longer "overnight guests", although they had spent the previous night at an apartment, where the search occurred the following evening and the defendants did not plan on spending that evening at the apartment); Ohio v. Corbin, 957 N.E.2d 849, 854-55 (Ohio Ct. App. 2011) (although defendant frequently stayed the night at girlfriend's house, defendant could not show that he was an overnight guest where he did not intend on spending the night of the search at the house, and where he did not contribute to the mortgage or utility bills).

Also relevant is Campbell's purpose in being at the Praver residence when the search occurred.  See e.g., Minnesota v. Carter, 525 U.S. 83 (1998) (guests have no reasonable expectation of privacy in another's home when visiting exclusively for a commercial purpose); United States v. Cooper, 203 F.3d 1279, 1285 n. 3 (11th Cir. 2000) (even overnight guests may lack a reasonable expectation of privacy where they are using a hotel room predominantly for narcotics trafficking); United States v. Bell, 218 F. App'x 885, 895-96 (11th Cir. 2007) (overnight guest in an apartment lacked a reasonable expectation of privacy because he was there mainly in connection with his drug enterprise). Campbell's trial testimony indicated that he left the Praver house earlier on the day of January 8, 2009, and returned for the purpose of awaiting delivery of the UPS parcel.  See Trial Tr. Vol. V at 71, 116.  Campbell planned to sell the marijuana contained in the shipment to various street-level dealers on credit.  Id. at 65-66.  Thus, Campbell's departure and subsequent return for a purpose unrelated to being an overnight guest mark a break from whatever "overnight guest" status he previously held, for he was no longer at the Praver house for the purpose of seeking repose under the shelter of a kind host. Instead, Campbell was present for a quintessentially commercial purpose: to await the

20

delivery of a product he planned to distribute for a profit.  Accordingly, given that the search occurred the evening after Campbell was an overnight guest, the fact that Campbell did not intend to spend the following night at the house, and evidence that Campbell left the house and later returned for a purpose wholly unrelated to being an overnight guest, Campbell cannot claim that his expectation of privacy in the Praver house as an overnight guest carried over from January 7, 2009, into the evening hours of January 8, 2009.

Moreover, Campbell's case bears a striking resemblance to one out of this Court's neighboring Circuit, where the Fourth Circuit Court of Appeals found that a defendant lacked standing to challenge the search of another's apartment because that defendant had an essentially commercial relationship with the residence. United States v. Gray, 491 F.3d 138 (4th Cir. 2007).  In Gray, the Fourth Circuit found that a defendant had a primarily commercial relationship with a co-defendant's residence where the parties were running a drug ring out of the apartment; maintained digital scales and a large amount of cash there; the defendant had drugs on his person when arrested; the defendant did not have a key to the residence; the defendant was just one among several visitors to the apartment; and the defendant did not plan to spend the night of the search at the residence.  Id. at 146-47.  The Court also considered the presence of weapons, a large quantity of drugs, and the lack of any "private space" for the defendant to indicate a primarily "commercial relationship" with the residence.  Id. at 151-52.  The Court further determined that just because the defendant visited the apartment four to five times per week; watched television and played video games there; kept a toothbrush, change of clothes, and a Playstation console at the apartment; and slept over in the past did not mean that the defendant could overcome the conclusion that the defendant had a primarily commercial connection with

21

the residence.  Id.  Here in comparison, Campbell was at the Praver house on the day of

the search to await the delivery of a large shipment of marijuana from California, which he

then planned to sell on credit to various street-level dealers.   Trial Tr. Vol. V. at 65-66.

Campbell was thus using the Praver house as a base from which to receive and distribute

narcotics.   When officers searched the Praver house, they found a large quantity of drugs

and cash, including over $5,000 on Campbell's person, and more than 100 pounds of

marijuana.  Officers discovered a money counter and four weapons in the Praver house as

well, including an assault rifle with a 100-round magazine.  Like the defendant in Gray,

Campbell did not have a key to the Praver house, and he was just one among many people

who stayed at the residence.  Further similar to Gray, Campbell did not intend on spending

the night of the search in question at the Praver house, nor did Campbell indicate he had

his own exclusive private space there, such as his own room.  See Gray, 491 F.3d at 147,

152.  The fact, then, that Campbell kept some personal possessions at the Praver house,

visited several times a week, and even spent some nights there in the past does not

establish that he had a reasonable expectation of privacy in the Praver house when the

search occurred.  See id. at 152.  Rather, Campbell's connection to the Praver house was

more commercial than social on the early evening of January 8, 2009.

Because the Court finds that Campbell's underlying claim to have had a reasonable

expectation of privacy in the Praver house lacks merit, it is unnecessary to address whether

Haine performed deficiently by not calling Campbell or certain others to testify at the

suppression hearing.[5]  See Kimmelman, 477 U.S. at 375.  As discussed above, even if the information about Campbell's connection to the Praver house was true, it still would not establish a legitimate expectation of privacy.  Moreover, Campbell has not overcome the strong presumption that Haine's decision was strategic.  Strickland, 466 U.S. at 689; Chandler v. United States, 218 F.3d 1305, 1314-15 (11th Cir. 2000).  Indeed, Campbell's supporting memorandum reveals that Haine gave a strategic reason for not having Campbell testify, which was that he feared the government would "trip [him] up" with questions.  Affidavit A-1 at ¶ 10.  In light of conflicting statements that Campbell gave police regarding his residence, see R&R at 17, this was surely a valid concern.  The affidavit of Temario Wiley also reveals that (a) Haine met with potential witnesses beforehand to discuss Campbell's case; (b) Haine determined that he did not think Wiley could provide helpful information, and (c) Haine thought Wiley lacked credibility.  Affidavit C-1 at ¶¶ 4-6.  These reflect informed, strategic considerations, which are entitled to deference.  Strickland, 466 U.S. at 689-91.

Finally, it was not unreasonable for Haine to resist Campbell's proposed alternative to take the stand in the suppression hearing and admit to the entire crime so that Campbell could establish standing to challenge the search of the Praver house.  Although the government would not have been able to use such testimony as direct evidence of Campbell's guilt at trial, Simmons v. United States, 390 U.S. 377, 394 (1968), it could have

---

[5] Campbell also suggests that Haine denied him the right to testify by failing to call him at the suppression hearing.  First, neither the Supreme Court nor the Eleventh Circuit has explicitly held that the right to testify extends to suppression hearings.  Lewis v. United States, 491 F. App'x 84, 86 n. 1 (11th Cir. 2012).  Second, because the Court finds that Campbell's underlying Fourth Amendment claims fail, and thus any error concerning Campbell's failure to testify did not result in prejudice, the Court need not address whether Campbell had a constitutional right to testify at his suppression hearing.  See id.

used the testimony for devastating impeachment.  United States v. Quesada-Rosadal, 685 F.2d 1281 (11th Cir. 1982).   A reasonable attorney could have made a sound strategic decision to avoid this risk by relying on information other than his client's testimony.[6]

On this record, Campbell has failed to show that Haine performed deficiently in not having Campbell and his friends testify at the suppression hearing regarding Campbell's connections to the Praver house.

### C.  Storage Unit 226

As a result of the law enforcement officers' search of the Praver house, police obtained a search warrant for Storage Unit 226, where officers discovered more than $500,000 in cash, Alex Campbell's birth certificate, and mail addressed to Sonia Dodd, among other things.   Campbell claims that Haine rendered ineffective assistance by "abandoning" a challenge to the officers' search of Storage Unit 226, and by failing to establish Campbell's expectation of privacy in that storage unit.

The record reflects that Haine did not abandon Campbell's motion to suppress evidence seized from Storage Unit 226.  See Motion to Suppress at 1-2.  To the contrary, Haine did attempt to suppress the evidence obtained from that storage unit, but as the fruit of a poisonous tree rather than as evidence discovered during a search that was illegal per

---

[6] Campbell correctly points out in his Motion to Vacate that a defendant has the burden of establishing his expectation of privacy when moving to suppress evidence allegedly seized in violation of the Fourth Amendment.  However, this does not mean, as Campbell believes, that a defendant must testify in order to prove his expectation of privacy.  An exhaustive review of Fourth Amendment case law is not necessary to point out that there is no per se rule against a defendant relying on circumstantial evidence, judicial notice, cross-examination of the government's witnesses, as here, or something else to establish a defendant's expectation of privacy.  As such, Campbell's suppression counsel was not necessarily deficient in choosing not to call Campbell or some of his friends to testify to Campbell's asserted social connections to the Praver house.

se.  See id. at 1-2, 7-8.

Neither the Report and Recommendation on Campbell's motion to suppress nor this Court's order adopting the Report identified any separate illegality in the search of Storage Unit 226.  See R&R at 27-35; Order Adopting R&R.  That being the case, the evidence discovered in Storage Unit 226 was only suppressible if it had been the fruit of a prior illegal search, such as that of the Praver house.  However, because Campbell lacked an expectation of privacy in the Praver house where officers retrieved the rental agreement for Unit 226, he could not avail himself of the fruit of the poisonous tree doctrine.  United States v. Salvucci, 448 U.S. 83, 85, 95 (1980) (the fruit of the poisonous tree doctrine applies only when the defendant has standing regarding the Fourth Amendment violation which constitutes the poisonous tree).  As such, Campbell's underlying Fourth Amendment claim with regard to Storage Unit 226 lacks merit.  Therefore, Haine did not render ineffective assistance under Kimmelman as to Unit 226.  Kimmelman, 477 U.S. at 375 (requiring that a petitioner's underlying Fourth Amendment claim must have merit in order to establish that an attorney rendered ineffective assistance of counsel in a motion to suppress).

### D.  The Trevi House

In his Motion to Vacate, Campbell claims that his attorney gave ineffective assistance by failing to establish Campbell's expectation of privacy in the Trevi house. Supporting Memorandum at 15-16.  As with the Praver house, in the Report and Recommendation the Magistrate Judge concluded that officers exceeded the scope of their search warrant when they inspected lease documents in the Trevi house.  R&R at 30-31.

Because one of those lease documents led the officers to obtain a search warrant for Storage Unit 2002, where the government seized shipping papers used to establish the quantity of marijuana Campbell was trafficking, Trial Tr. Vol. VI at 17-21, the determination that Campbell failed to establish an expectation of privacy in the Trevi house was significant.

With regard to his expectation of privacy in the Trevi house, Campbell asserts that he kept personal belongings at the house, that he had a key to the house, and that he routinely stayed with his mother there.  Affidavit A-5 at ¶¶ 3-5.[7]  However, Campbell's trial testimony affirmatively contradicts this claim.  Campbell testified at trial, under oath, that he had not stayed with his mother for more than two years preceding the search of the Trevi house.  Trial Tr. Vol. V at 118-19.  Campbell further testified at trial that he only spoke to his mother about twice a week.  Id. at 119.  This testimony is inconsistent with the picture Campbell now tries to paint of the Trevi house as a sort of home-away-from-home.  Campbell's trial testimony refutes this claim.

As such, Campbell's underlying claim to have had a reasonable expectation of privacy in the Trevi house lacks merit.  Therefore, Haine did not render ineffective assistance by failing to establish Campbell's unmeritorious claim to have had an expectation of privacy in the same.  Kimmelman, 477 U.S. at 375.

---

[7]  While possessing a key to a residence is certainly probative, it is not sufficient to establish a reasonable expectation of privacy in another's home.  Baron-Mantilla, 743 F.2d at 870 (citing United States v. Rackley, 724 F.2d 1463, 1468 (11th Cir. 1984)).

### E.  Storage Unit 2002

Campbell also claims that Haine rendered ineffective assistance by failing to establish Campbell's expectation of privacy in Storage Unit 2002, from which law enforcement officers retrieved an assault rifle and boxes of shipping receipts that were used to establish the quantity of marijuana that Campbell and his family were trafficking. The record reflects that Haine attempted to suppress the evidence obtained from Storage Unit 2002 as the fruit of a poisonous tree rather than as evidence discovered during a search that was illegal per se.  See Motion to Suppress at 1-2, 7-8.

Campbell thinks his attorney performed deficiently by not establishing that he had an expectation of privacy in Storage Unit 2002. However, a defendant need not establish an expectation of privacy in the place where the fruits of a poisonous tree are discovered if the defendant had an expectation of privacy in the place or item where the unconstitutional predicate search occurred.  See e.g., United States v. Olivares-Rangel, 458 F.3d 1104 (10th Cir. 2006); Wong Sun v. United States, 371 U.S. 471 (1963) (suppressing evidence incriminating of the defendant that was discovered in the home of another person because it was the fruit of an illegal search).  In other words, a defendant need not prove an expectation of privacy in the place where the "fruits" are discovered "if only he has standing to challenge the violation which constitutes the poisonous tree." LeFave, 6 Search & Seizure § 11.4 (5th Ed.).  Because Haine sought to suppress the evidence discovered in Storage Unit 2002 as the fruits of a poisonous tree, there was no need, as a matter of law, for Haine to separately establish Campbell's expectation of privacy in Storage Unit 2002.  Thus, Haine was not necessarily ineffective for not establishing Campbell's expectation of privacy in this storage unit.

27

The problem for Campbell is that he lacked a legitimate expectation of privacy in the Trevi house where officers exceeded the scope of the warrant when they examined the rental agreement for Unit 2002 (i.e., he lacked an expectation of privacy in the "poisonous tree").  Because no illegal search occurred at the storage unit itself, Campbell could not succeed in suppressing the evidence that was discovered there pursuant to a search warrant, even assuming Campbell had established a distinct expectation of privacy in the unit.  See R&R at 28-35; Salvucci, 448 U.S. at 85, 95 (the fruit of the poisonous tree doctrine applies only when the defendant has standing regarding the Fourth Amendment violation which constitutes the poisonous tree).  Therefore, because Campbell's Fourth Amendment claim as to Storage Unit 2002 would ultimately fail, Haine did not render ineffective assistance on this element of Campbell's claim.  Kimmelman, 477 U.S. at 375.

Moreover, at trial Campbell repeatedly and adamantly denied having any connection to Storage Unit 2002.  Campbell denied having any possessions in the unit, or even having knowledge about the storage unit's existence.  Trial Tr. Vol. V at 93, 95, 150, 177.  Haine could not plausibly have argued that Campbell had an expectation of privacy in a storage unit about which his client insisted he knew nothing.

### F.  Trial Counsel's Performance

Lastly, Campbell contends that trial counsel Louis Hardin gave ineffective assistance by failing to elicit testimony establishing Campbell's expectation of privacy in the UPS parcel, the Praver and Trevi houses, and the storage units during the trial.  Supporting Memorandum at 33-35.  Campbell believes that getting this testimony into the record on appeal would have allowed the Eleventh Circuit Court of Appeals to reverse this Court's

denial of his motion to suppress.  Because, as discussed above, Campbell's underlying Fourth Amendment claims ultimately lack merit, Hardin did not render ineffective assistance.  Kimmelman, 477 U.S. at 375.

### IV.  Certificate of Appealability Pursuant to 28 U.S.C. § 2253(c)(1)

If Campbell seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted.  This Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To make this substantial showing, Campbell "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n. 4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.  See Slack, 529 U.S. at 484. However, when a district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  Id.  Upon consideration of the record as a whole, this Court will deny a certificate of appealability.

As such, and in accordance with the Rules Governing Section 2255 Cases in the United States District Courts, it is hereby

**ORDERED:**

1.  Fredrick Campbell's Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody under 28 U.S.C. § 2255 (Doc. 1, Motion to Vacate) is **DENIED.**

2.  The Clerk shall enter judgment in favor of the United States and against Fredrick Campbell, and close the file.

3.  If Campbell appeals the denial of this petition, the Court denies a certificate of appealability.  Because this Court has determined that a certificate of appealbility is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case.  Such termination shall serve as the denial of the motion.

**DONE AND ORDERED** at Jacksonville, Florida, this 17th day of June, 2015.

MARCIA MORALES HOWARD
United States District Judge

lc 19

Copies:
Counsel of record
Pro se party